IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

KENNETH L. CLARDY                                                                                        PLAINTIFF

vs.                                                                          CIVIL ACTION NO. 1:14CV85-SAA

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY                                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Kenneth L. Clardy has filed suit under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying his applications for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Plaintiff protectively filed an application for benefits on May 10, 2010 alleging disability beginning on April 1, 2009. Docket 8, p. 132-39, 151-53. His claim was denied initially on July 8, 2010, and upon reconsideration on September 26, 2011. *Id.* at 65-66, 67-68. He filed a request for hearing and was represented by counsel at the hearing held on May 22, 2013. *Id.* at 34-63. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 18, 2013, (Docket 8, p. 18-27) and on November 8, 2013, the Appeals Council denied plaintiff's request for a review. *Id.* at 7-9. Plaintiff timely filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.

**I. FACTS**

Plaintiff was born on October 3, 1974 and has a GED. Docket # 8, p. 41-42. He was thirty-four at the time of onset and thirty-eight at the time of the hearing. *Id.* at 34. Plaintiff's

1

past relevant work was as a diesel mechanic and automobile sales person. *Id.* at 58. Plaintiff contends that he became disabled before his application for benefits as a result of "back pain, depression, neuropathy in legs and feet, arthritis, fibromoalgy [sic], sckolis [sic] spine, sharko [sic] Marie Tooth Syndrome, critical back pain and leg and severe foot damage." *Id.* at 155.

The ALJ rejected his claims of disability, concluding that even though the plaintiff had severe impairments and could not perform his past relevant work, there nevertheless were jobs which existed in significant numbers in the national economy which plaintiff could perform. Consequently, plaintiff was not disabled. The ALJ went on to explain his finding that plaintiff was less than fully credible in describing the intensity, persistence and limiting effects of his claimed symptoms. *Id.* at 24. After evaluating all of the evidence in the record, including testimony of plaintiff, the ALJ held that plaintiff's physical and mental impairments, considered singly and in combination, do not significantly limit the ability to perform basic work activities. As a result, the ALJ concluded that plaintiff is not disabled under the Social Security Act. *Id.* at 27. Plaintiff claims that the ALJ's RFC was not supported by substantial evidence.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First,

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[2] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

plaintiff must prove he is not currently engaged in substantial gainful activity.[3]  Second, plaintiff must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[4]  At step three the ALJ must conclude plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[5]  If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  The court has the responsibility to

---

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[4] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[5] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[7] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[8] *Muse*, 925 F.2d at 789.

scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[9] even if it finds that the evidence leans against the Commissioner's decision.[10] The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff contends the ALJ erred by reaching an RFC that was not based upon substantial evidence. Docket 11. The ALJ's concluded that plaintiff retained the RFC to "perform at the sedentary exertional level, with additional limitations. He can occasionally stoop, crouch, or

---

[9] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[10] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

climb ramps and stairs. He can never kneel, crawl, or climb ladders, ropes, and scaffolds."
Docket 8, p. 22. Plaintiff asserts that the ALJ's RFC was based upon medical opinions as to plaintiff's abilities which assumed he would recover from his foot wound – not his actual ability to perform work related functions at the time the opinions were expressed or at the time of his application, the hearing or the ALJ's Decision. Docket 11, p. 16. Because his foot wound never healed, and he foot was amputated in early to mid-2014, the condition that the ALJ's RFC was based upon never came to fruition. Instead, at all relevant times to plaintiff's application, he was unable to stand on his foot and had been instructed to be non-weight bearing by his physicians since at least May 2011. Docket 8, p. 448, 454. Plaintiff argues that the ALJ should have considered plaintiff's inability to bear weight in formulating the RFC.

According to the Commissioner, however, the "evidence and Clardy's activities do not support more functional restrictions at the sedentary exertional level than the ALJ found." Docket 12, p. 7. To support her assertion that plaintiff's activities do not support a more stringent RFC, the Commissioner notes that plaintiff sat during the hearing and was able to sit through 30-40 minutes of class before standing up. *Id.* And despite the deference the court must grant to the ALJ's findings, it is obvious that the Commissioner has picked and chosen relatively isolated medical records – often out of context – to support the ALJ's failure to determine plaintiff's current physical condition. For instance, the Commissioner relies upon a statement by Dr. Christensen that "with the prescribed brace Clardy could 'ambulate properly without further breakdown of the skin and the wound and he could function more normally and be able to be gainfully employed and support himself.'" Docket 12, p. 9. However, the both the ALJ and the Commissioner fail to acknowledge that plaintiff never was able to wear the prescribed brace

because his foot never healed enough to wear the brace prior to his amputation. Docket 8, p. 40. The quoted statement by Dr. Christensen was pulled from a letter which he wrote to assist plaintiff in obtaining a new brace that cost $2,000, not to describe plaintiff's physical condition at the time the letter was written. The ALJ also accorded weight to this statement by Dr. Christensen, and he also neglected to acknowledge the context. Docket 8, p. 18. The letter also said that

> [w]ithout the brace, he is going to have a difficult time with this. There will be further breakdown of the foot. He will not be able to maintain his body weight for a long period of time on that foot without further tissue breakdown and possibly even future amputation if the wound opens up and leads to further infection and complications. For the most part, Mr. Clardy was a good patient. He followed his postoperative instructions, was compliant and did well in the postoperative recovery and wound care.

*Id.* What the ALJ left out was that plaintiff clearly could not perform work-related functions such as standing at the time the letter was written. Additionally, the Commissioner made no mention of the fact that plaintiff was no longer able to sit through class as of the time of the hearing, but instead had dropped out of community college in an effort to heal his foot. Docket 8, p. 985.

The undersigned has thoroughly reviewed the record and finds that at the time of the ALJ's opinion, Clardy could not stand to perform work-related functions for any period of time; both the treating and examining physicians had emphasized that he must be non-weight-bearing while the healing occurred. Docket 8, p. 460, 578, 588, 871, 882, 925, 955, 984-86, and 987. Dr. Bullwinkel, an orthopedic specialist and the only medical doctor to examine plaintiff at the ALJ's request, opined that plaintiff could not sit, stand and/or walk for even two hours and that he could not lift and carry even ten pounds. Docket 8, p. 686-87. The ALJ only afforded Dr.

6

Bullwinkel's opinion "some weight" because "the claimant's foot condition is not as limiting as described . . ." Docket 8, p. 24. Dr. Bullwinkle's opinion was not based only upon plaintiff's foot ulceration, but primarily upon his diagnosis of degenerative disk disease, degenerative joint disease and osteoarthritis, primarily in his back [Docket 8, Attachment 1, p. 233], and the limitations imposed by deterioration of plaintiff's spine.

The ALJ repeatedly referenced plaintiff's failure to follow his physician's orders to be non-weight bearing as if he had a realistic option to comply. Docket 12, p. 10. It is clear that plaintiff is impoverished, often had no ability to get home, and was forced to walk. Docket 8, p. 55-57. This is not a case where he was walking on his foot directly to disobey his physician's orders, but instead a case of necessity. The reliance on plaintiff's failure to be non-weight bearing by the Commissioner is an attempt to support an RFC that is simply unsupported by the record. At the time of the ALJ's opinion, plaintiff had been instructed by every physician that either treated or examined him to be 100 percent non-weight bearing. There is simply no support for an RFC that allows plaintiff to perform jobs that require standing.

Relying on *Johnson v. Heckler*, 767 F. 2d 180, 183 (5th Cir. 1985), the Commissioner asserts that plaintiff's amputation does not "relate to the relevant period covered by the ALJ's decision, and represents a subsequent worsening of a previously non-disabling foot condition." However, *Johnson* clearly differentiates between cases in which "there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him" and cases in which the "new evidence show[s] only that a disability commenced after the decision of the Secretary." *Id.* Clardy's amputation clearly falls into the category of new evidence that would have changed the outcome of the Secretary's determination

7

had it been before him. Clardy battled his foot wound for two years while being told that amputation may become necessary.

The undersigned is of the opinion that the ALJ's RFC did not properly include plaintiff's limitations at the time of the opinion, but instead was an RFC of what plaintiff prospectively could do if his foot healed. Even without the subsequent amputation, the undersigned concludes that the ALJ's RFC was not supported by substantial evidence. However, given that an amputation has occurred and knowing that plaintiff's foot was in fact amputated would have changed the Secretary's determination, the case is remanded to obtain medical evidence of the amputation. If medical evidence supports the amputation, plaintiff should be granted benefits and a determination of benefits be made. If medical records do not evidence an amputation, the ALJ is instructed to further explore plaintiff's actual abilities to perform work-related functions and obtain additional medical opinions if necessary.

## IV. CONCLUSION

The Commissioner's denial of benefits will be remanded for additional review in accordance with this opinion. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 16th day of January, 2015.

                                                   /s/ S. Allan Alexander  
                                                   UNITED STATES MAGISTRATE JUDGE